### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Planet Aid, Inc., and Lisbeth Thomsen,<br><br>                Plaintiffs,<br><br>    v.<br><br>Reveal, Center for Investigative Reporting, Matt Smith, and Amy Walters,<br><br>                Defendants. | Civil Docket No. 1:16-cv-02974 (GLR) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR IN THE ALTERNATIVE TO TRANSFER VENUE

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.....................................................................................3

    The Parties .............................................................................................................3

    Reveal's Reporting on Planet Aid.........................................................................4

ARGUMENT.............................................................................................................7

I.    THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS. ...............................................................................................8

    A.    Defendants Are Not Subject To General Jurisdiction In Maryland.............9

    B.    Defendants Are Not Subject To Specific Jurisdiction In Maryland. .........10

        1.    Specific Jurisdiction Cannot Rest on Defendants' Online Publications.................................................................................... 10

            a.    The Online Content Was Not Directed Toward Marylanders. ..................................................................... 11

            b.    Maryland Was Not The Focus of The Articles................. 13

        2.    Defendants' Alleged Offline Conduct Does Not Support Specific Jurisdiction in Maryland. ............................................... 16

II.    VENUE DOES NOT LIE IN THIS DISTRICT. ..................................................19

    A.    The Case Must Be Dismissed Because No Substantial Part of the Action Giving Rise to Any Claim Occurred in Maryland. .......................20

    B.    Even If Some Portion of This Case Legally Could Proceed in Maryland, the Case Should be Transferred to the Northern District of California. ..............................................................................................24

        1.    The Northern District of California Will Be More Convenient for Witnesses and the Parties, and is an Equitable Venue for Planet Aid. ................................................. 25

        2.    The Interest of Justice Favors Transfer to the Northern District of California. ................................................................... 28

        3.    Plaintiffs' Choice of Forum Carries Minimal Weight. ................. 31

CONCLUSION.........................................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
293 F.3d 707 (4th Cir. 2002) ........................................................................................10

*Braun v. Chronicle Publ'g Co.*,
52 Cal. App. 4th 1036 (1997) ..........................................................................................1

*Buckley v. N.Y. Times Co.*,
338 F.2d 470 (5th Cir. 1964) .........................................................................................17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).........................................................................................................9

*Calder v. Jones*,
465 U.S. 783 (1984).......................................................................................................18

*Carefirst of Md., Inc. v. CareFirst Pregnancy Ctrs., Inc.*,
334 F.3d 390 (4th Cir. 2003) ................................................................................ *passim*

*Clemens v. McNamee*,
615 F.3d 374 (5th Cir. 2010) .........................................................................................14

*Combs v. Bakker*,
886 F.2d 673 (4th Cir. 1989) ...........................................................................................8

*Consulting Engineers Corp. v. Geometric Ltd.*,
561 F.3d 273 (4th Cir. 2009) ..................................................................................1, 9, 14

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014)...................................................................................................9, 10

*Davis v. Costa-Gavras*,
580 F. Supp. 1082 (S.D.N.Y. 1984)...........................................................................15, 30

*Dring v. Sullivan*,
423 F. Supp. 2d 540 (D. Md. 2006)......................................................................8, 11, 12, 14

*Elemary v. Philipp Holzmann A.G.*,
533 F. Supp. 2d 144 (D.D.C. 2008)................................................................................21

*Fertel v. Davidson*,
2013 WL 6842890 (D. Md. Dec. 18, 2013)................................................................11, 12

*Finmeccanica S.p.A. v. Gen. Motors Corp.*,
  2007 WL 4143074 (E.D. Va. Nov. 19, 2007)........................................................................27

*Grayson v. Anderson*,
  816 F.3d 262 (4th Cir. 2016) .................................................................................................3

*Greenblatt v. Gluck*,
  265 F. Supp. 2d 346 (S.D.N.Y. 2003)...................................................................................21

*Ground Zero Museum Workshop v. Wilson*,
  813 F. Supp. 2d 678 (D. Md. 2011) ......................................................................................28

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005)..................................................................................................21

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................................................................................26

*Int'l Shoe Co. v. Washington*,
  326 S. Ct. 310 (1945)......................................................................................................10, 17

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)..........................................................................................................17, 18

*Kulik Photography v. Cochran*,
  975 F. Supp. 812 (E.D. Va. 1997) ........................................................................................18

*Lupo v. JPMorgan Chase Bank, N.A.*,
  2015 WL 410273 (D. Md. Jan. 26, 2015)...................................................................... *passim*

*Lynch v. Vanderhoef Builders*,
  237 F. Supp. 2d 615 (D. Md. 2002) ......................................................................................31

*Miller v. Asensio*,
  101 F. Supp. 2d 395 (D.S.C. 2011)........................................................................................22

*MTGLQ Inv'rs, L.P. v. Guire*,
  286 F. Supp. 2d 561 (D. Md. 2003) ......................................................................................21

*New York Times Co. v. Sullivan*,
  376 U.S. 254, 280 (1964).......................................................................................................29

*Pablo Star Ltd. v. Welsh Gov't*,
  170 F. Supp. 3d 597 (S.D.N.Y. 2016)....................................................................................22

*Piedmont Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc.*,
  402 F. Supp. 2d 609 (M.D.N.C. 2005) ..................................................................................26

iii

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)........................................................................................................32

*Pollux Holding Ltd. v. Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)............................................................................................31

*Revell v. Lidov*,
    317 F.3d 467 (5th Cir. 2002) .......................................................................................14

*Shoppers Food Warehouse v. Moreno*,
    746 A.2d 320 (D.C. 2000) ...........................................................................................15

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)......................................................................................................25

*Steel Co. v. Citizens for a Better Environment*,
    532 U.S. 83 (1998)..........................................................................................................1

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)........................................................................................................25

*Stover v. O'Connell Assocs., Inc.*,
    84 F.3d 132 (4th Cir. 1996) .........................................................................................17

*Tamarian Carpets, LLC v. Ahmadi & Sons, Inc.*,
    2013 WL 3771375 (D. Md. July 16, 2013)..................................................................11

*Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
    791 F.3d 436 (4th Cir. 2015) .......................................................................................25

*Union of Orthodox Jewish Congregations of Am. v. Brach's Confections, Inc.*,
    2005 WL 1115222 (D. Md. May 11, 2005)...........................................................27, 31

*Universal Leather, LLC v. Koro AR, S.A.*,
    773 F.3d 553 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 2860 (2015).............................9

*Weeks Marine, Inc. v. Stokes*,
    2012 U.S. Dist. LEXIS 11760 (S.D. Miss. Feb. 1, 2012)...........................................26

*Weinstein v. Friedman*,
    1996 WL 137313 (S.D.N.Y. Mar. 26, 1996) ..............................................................30

*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) .......................................................................................28

*Young v. New Haven Advocate*,
    315 F.3d 256 (4th Cir. 2002) ................................................................................ *passim*

**Federal Statutes**

28 U.S.C.
§ 1332...........................................................................................................................5
§ 1391.........................................................................................................................20
§ 1391(a) .................................................................................................................1, 19
§ 1391(a)(1) ...............................................................................................................20
§ 1391(b)(3) ...............................................................................................................20
§ 1404(a) ...............................................................................................................24, 27
§ 1406(a) ....................................................................................................................24

**State Statutes**

Cal. Civ. Proc. Code
§ 425.16(a) .................................................................................................................29
§ 425.16(b)(1) ..............................................................................................................1

Md. Code Ann. Cts. & Jud. Proc.
§ 6–103(b)....................................................................................................................9
§ 6–103(b)(3) .............................................................................................................11
§ 6–103(b)(4) .............................................................................................................11

**Rules**

Federal Rule of Civil Procedure
12(b)(2) ...................................................................................................................7, 8
12(b)(3) ......................................................................................................................7

**Other Authorities**

15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*
§ 3851 (3d ed.) ..........................................................................................................25

http://www.squirepattonboggs.com/locations/san-francisco;
http://www.squirepattonboggs.com/locations/palo-alt ........................................................27

https://transition.fcc.gov/fcc-
bin/fmq?call=wamu&arn=&state=&city=&freq=0.0&
fre2=107.9&serv=&vac=&facid=&asrn=&class=&list=0&ThisTab=Results+t
o+This+Page%2FTab&dist=&dlat2=&mlat2=&slat2=&NS=N&dlon2=&mlo
n2=&slon2=&EW=W&size=9 ....................................................................................17

https://transition.fcc.gov/fcc-bin/tvq?call=wrc-tv&arn=&
state=&city=&chan=0.0&cha2=69&serv=&type=&facid=&asrn=&list=0&Th
isTab=Results+to+This+Page%2FTab&dist=&dlat2=&mlat2=&slat2=&NS=
N&dlon2=&mlon2=&slon2=&EW=W&size=9....................................................................17

Restatement (Second) of Conflict of Laws ...................................................................................28

Restatement (Second) of Conflict of Laws
    § 150 .................................................................................................................................28
    § 150 cmts. ......................................................................................................................29

Robert D. Sack, *Sack on Defamation* § 15.1.3[C][1][c] ...............................................................16

## PRELIMINARY STATEMENT

This lawsuit takes aim at recent globe-spanning investigative reporting into concerns about the non-profit and other *bona fides* of Plaintiff Planet Aid – operator of ubiquitous yellow clothing-donation bins and recipient of U.S. grants, all of which are claimed to be used in service of environmentalism and impoverished foreign populations, *see* Compl. ¶ 2 – that lead to a series of online articles and streamed audio broadcasts revealing a variety of questionable practices. Planet Aid and its co-Plaintiff Lisbeth Thomsen, a resident employee of a Malawian Planet Aid affiliate, bring libel and related claims against the California Defendants Reveal and its staff reporters, but apparently hoping to avoid that state's strong protection for speech on matters of public concern,[1] sued in this Court, despite the fact that both Defendants and the allegedly libelous reports lack any real connection with Maryland.  The suit thus cannot proceed, because neither personal jurisdiction nor venue lie in this District.

Personal jurisdiction is not a "legal nicety" but rather is an "essential ingredient" of the Court's ability to hear a case, *Steel Co. v. Citizens for a Better Environment*, 532 U.S. 83, 101 (1998), which Plaintiffs bear the burden of establishing, *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009), just as they must show venue is proper, *Lupo v. JPMorgan Chase Bank, N.A.*, 2015 WL 410273, at *3 (D. Md. Jan. 26, 2015).  Plaintiffs offer rote averments of the Court's "jurisdiction over each Defendant … who has minimum contacts with this District" and that "venue is proper … in accordance with 28 U.S.C. § 1391(a) because a

---

[1]  *See* Cal. Civ. Proc. Code § 425.16(b)(1) (state "Strategic Lawsuits Against Public Participation," or "anti-SLAPP" law under which any "cause of action against a person arising from … [his] right of … free speech … in connection with a public issue [is] subject to a special motion to strike, unless the court determines … there is a probability that the plaintiff will prevail"); *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (1997) (legislature expressly intended anti-SLAPP law "to nip SLAPP litigation in the bud" by quickly disposing of claims targeting free speech).

substantial part of the events … occurred in this District." Compl. ¶¶ 14, 16. Yet the rest of the Complaint fails to include facts to support these claims. Meanwhile, Defendants' publications that Plaintiffs complain libeled them all were published online, were not directed to Maryland, do not involve Maryland concerns, and even when alleged to appear in outlets *near* Maryland, actually emanated from ***outside*** the state: both the subject matter and conduct of the reporting focused on Malawi, on Denmark and Mexico, and on other far-flung settings, <u>not</u> Maryland.

Planet Aid seems to rest its case for jurisdiction and venue on the idea that it was injured here because Maryland is where it "has its operations," Compl. ¶ 14 and "its principle [*sic*] place of business." *Id*. ¶ 17. But these allegations do not bear out. As recently as two months ago, in a verified complaint, Planet Aid alleged that it is headquartered in Massachusetts, not Maryland,[2] and Thomsen's domicile is Malawi. In any case, Defendants "must have done something more than merely place information on the Internet" that causes injury in Maryland. *Carefirst of Md., Inc. v. CareFirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 400 (4th Cir. 2003). Yet Defendants did not direct their conduct at specifically at Maryland or Marylanders in any way.

Even if venue and jurisdiction were proper here, it would still make sense to transfer this case to the Northern District of California out of convenience. As far as Defendants can tell, there are no Maryland-based witnesses, but many in Northern California; none of the relevant discovery material is located in Maryland; and California substantive law will apply, because California has a strong interest in this case and close connections with Defendants, while Maryland has none. Meanwhile, Planet Aid's California operations are relatively similar to those it claims exist in this District.[3] This case should thus be dismissed or transferred.

---

[2]  *See* Declaration of Ronald G. London ("London Decl.") ¶¶ 2-4 & Exs. 1-3.

[3]  *See* London Decl ¶¶ 6-8 & Exs. 5-7.

## FACTUAL BACKGROUND

Accepting the Complaint's allegations as true except where controverted by declarations and/or other evidence subject to judicial notice, all of which the Court may consider for purposes of assessing personal jurisdiction and venue, *see, e.g.*, *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016); *Lupo*, 2015 WL 410273, at *3; *see also infra* pp.7-8, 19-20, the facts relevant to Plaintiffs' failure to establish personal jurisdiction and that venue is proper in this District are as follows.

### **The Parties**

Corporate Plaintiff Planet Aid, Inc., a Massachusetts-based non-profit, has operations in at least 21 states and affiliates in 16 African countries. Compl. ¶¶ 17, 19. Planet Aid alleges it has its principal place of business in Maryland, *id.* ¶ 17, though the Complaint offers no information about its Maryland-based operations, nor explains how those operations differ from those in the other 20-odd states in which it operates, or how they make Maryland Planet Aid's "principal" place of operation. At the same time, just two months before the Complaint was filed in this action, Planet Aid filed a verified Complaint in a different action alleging it was headquartered in Massachusetts – making no reference to operations in Maryland – consistent with how Planet Aid has characterized its operations historically. *See* London Decl. ¶¶ 2-4 & Exs. 1-3. The Complaint further alleges that individual Plaintiff Lisbeth Thomsen is a resident and citizen of Malawi working for Planet Aid's subcontractor there, Compl. ¶¶ 21–22, but contains no averment she has any connection with Maryland, let alone the United States.

The Complaint does, however, provide considerable detail regarding Planet Aid's efforts *outside* of Maryland, and in particular its operations in foreign countries. It alleges that among Planet Aid's goals is "to generate funds … to help impoverished and needy populations throughout the world," and that it has "contributed … to charitable purposes in 16 countries, including

in Malawi." *Id.* ¶ 17. It specifies that "Planet Aid has worked with a variety of organizations to accomplish its non-profit goals," including that it "entered into a contract with DAPP Malawi," *id.*, and that it "applied for a grant by the USDA to assist the poor and needy in … Malawi." *Id.* ¶ 39. The Complaint touts Planet Aid's "achievements []realized in Malawi" *id.* ¶ 42, including how "students were trained at Teacher Training colleges" in Malawi, *id.* ¶ 45, the erection of "a brand new school in Shire Highlands, Amalika, *id.* ¶ 115, and achieving "positive results" via an "HIV/AIDs program" of "education and assistance to the Malawi population." *Id.* ¶ 118. No averment is made to how these activities bear on any activity in this District.

Defendant Reveal, the Center for Investigative Reporting, is a California-based nonprofit news organization renowned for groundbreaking and impactful investigative reporting. Founded in 1977, Reveal earned multiple Emmy Awards for news and documentary reporting, a Peabody Award, a George Polk Award, an Edward R. Murrow Award for investigative journalism, and has recently been a finalist for the Pulitzer Prize.[4] Co-Defendants Matt Smith and Amy Walters are California-based Reveal staff reporters who, between them, have dozens of years' experience as investigative journalists. Both reporters are domiciled in California, and when not traveling for newsgathering or reporting operate out of Reveal's Emeryville (San Francisco Bay/Alameda County) offices.[5]

### Reveal's Reporting on Planet Aid

The Plaintiffs' 15-claim Complaint, which invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332, Compl. ¶ 13, arises from investigative reporting by Smith and Walters

---

[4] Declaration of Amy Pyle ("Pyle Decl.") ¶ 8.

[5] Declarations of Matt Smith ("Smith Decl.") ¶¶ 2-5 and Amy Walters ("Walter Decl.") ¶¶ 2-6.

4

on Planet Aid's international operations and its connections to a cult headed by a Danish fugitive.  In particular, on March 19, 2016, Reveal published to its California-based website a podcast (*i.e.*, a radio program distributed via the Internet) titled "Alleged Cult Leader Plays Shell Game with US Foreign Aid."  Compl. Ex. A.  The podcast, which was recorded in California and directed and disseminated from there to a national and global audience,[6] oriented listeners by citing the "big, bright, yellow bins" with "Planet Aid" on the front that are "in 21 states right now," Compl. Ex. G, and by noting the organization's claims that it collects used clothing to sell in "Africa, and the money ... goes to aid projects around the world."  *Id.*  The podcast also conveyed that the "US government has also spent more than a $130 million on Planet Aid," through "some very special grant programs run by the US Department of Agriculture."  *Id.*  However, the report quickly turned to the international focus of Reveal's investigation.

The hour-long episode then detailed the results of Defendants' lengthy international investigation.  Reveal reported, for example, that "an FBI report linked [Planet Aid] to a Danish money laundering organization" called the "Teachers Group" that many have referred to as a "cult," and described how reporters Smith and Walters went to Denmark to speak with those familiar with Teachers Group and its leader, *id.* at 8; contacted USDA field offices in Nairobi, Kenya, *id.* at 28; and visited USDA headquarters in Washington, D.C. to seek a response from the federal government.  *Id.* at 33.  The report further detailed how the reporters "went to Malawi to check on a handful of Planet Aid projects."  *Id.* at 27.  Overall, the investigation focused on Planet Aid's operations internationally, examining its financial ties to the Teachers Group, and analyzing whether the federal government was aware of these connections or had monitored Planet Aid's operations in Africa.  *See generally* Compl. Ex. G (complete transcript).

---

[6]   Pyle Decl. ¶¶ 7, 10.

The Complaint does not allege the initial podcast and online in-depth article contained any content directed at Maryland or Marylanders, nor suggests that a substantial portion of the investigation was conducted in Maryland.  In fact, Defendants' reporting activities in Maryland were minimal.  Walters Decl. ¶ 8; Smith Decl. ¶ 7.  All editorial decisions about the articles and podcast were made from Reveal's offices in California.  *See* Pyle Decl. ¶ 10.

As the Complaint further details, after the initial national and international distribution of their story, Smith, Walters, and Reveal continued to report or to collaborate with other news outlets in producing additional reports – none of which were directed at Maryland residents or distributed by Maryland-based news outlets.  Instead, the basis of most of the alleged defamatory statements come from the initial report and podcast, as well as from additional articles published on Reveal's own California-based, nationally-focused website.  Compl. ¶ 51; *see also id.* Counts 2, 3, 5, 7, 8, and 9 (defamation claims based on material posted on Reveal's nationally-directed, California-based website).

Beyond reporting published nationally and globally on Reveal's own website, Plaintiffs also target statements in other forums that reached "throughout the United States," *id.* ¶ 56, but no outlet that is based in Maryland.  Specifically, the Complaint identifies statements published in an article on a Minnesota-focused website noting that a Minnesota Congressperson called for an investigation into Planet Aid, *id.* ¶ 51; an interview that originated at Los Angeles-based public radio station KCRW, *id.* ¶ 55; an online interview with Defendant Walters, *id.*; a 6-minute investigation and accompanying article airing on NBC4, owned by NBC in Washington, D.C., to which Smith and Walters contributed reporting from their California offices,[7] *id.* ¶ 55; and an audio report syndicated nationally via the Public Radio Exchange "PRX" distribution platform,

---

[7]  *See* Walters Decl. ¶ 9; Smith Decl. ¶ 8.

that was rebroadcast by, among other stations, WAMU, the public radio station operated by American University in Washington, D.C.. *Id.* ¶ 56; *see also* Pyle Decl. ¶¶ 7, 10. One defamation claim is also based on a report broadcast in Los Angeles, California. Compl. Count 6.

But the focus of all these stories remained on Planet Aid's activities in Africa, concerns of Danish officials, Planet Aid's luxurious compound in Mexico, and none of these claims rest on reports aired or disseminated by outlets based in Maryland. Nor does the Complaint contain any allegations that Defendants attempted to direct their reporting at Maryland in any way. And insofar as the Complaint recognizes that some of the material was a "re-broadcast" of previously distributed content, Compl. ¶ 56, Reveal did not instruct PRX to intentionally target Maryland with any rebroadcasts, Pyle Decl. ¶ 7, and the Complaint contains no allegation that Maryland makes up a particularly large market for these re-broadcasts. In fact, contrary to their bare claims of injury felt specially in Maryland, Plaintiffs elsewhere allege Defendants' assertedly defamatory and false reporting negatively affected their reputation broadly "in the community," which is averred to include "government agencies, individuals, and other non-for profits" with no particularly Maryland nexus. Compl. ¶¶ 203–205.

## ARGUMENT

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(2) and (b)(3), which permit motions to be made that assert lack of personal jurisdiction or improper venue. "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). The evidentiary considerations and burden are the same with respect to the venue inquiry. *See Lupo*, 2015 WL 410273. Here, Plaintiffs cannot meet their burden to show that either personal jurisdiction or proper venue exists, especially in

7

light of the definitive evidence Defendants have submitted along with this Motion showing that

neither Plaintiff has any close connection with Maryland, that Defendants' contact with

Maryland throughout their reporting and publication has been minimal, and that the reporting

itself has no connection to this District.

## I.      THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

The Complaint must be dismissed under Rule 12(b)(2) because Defendants Reveal and its

reporters are domiciled in and published the allegedly defamatory stories to national and global

audiences from California.  A federal district court sitting in diversity, as here, may exercise

personal jurisdiction over a nonresident defendant only if (1) the forum state's long-arm statute

creates personal jurisdiction, and (2) the exercise of personal jurisdiction is consistent with the

due process guarantees of the federal Constitution.  *Carefirst*, 334 F.3d at 396.  "Maryland courts

have consistently held that the state's long-arm statute is coextensive with the limits of personal

jurisdiction set by the due process clause of the Constitution," such that the" statutory inquiry

merges with the constitutional inquiry."[8]  When a nonresident defendant moves to dismiss for

lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction that

comports with due process.  *Consulting Eng'rs*, 561 F.3d at 276.

To satisfy due process, Plaintiffs must show as to Reveal and reporters Smith and Walters

that their "conduct and connection with the forum State are such that [they] should reasonably

anticipate being haled into court there."  *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553,

---

[8]   *Id.*  Some district courts have suggested that "dismissal might be appropriate if a plaintiff fails to identify a specific Maryland statutory provision authorizing jurisdiction either in the complaint or in an opposition to a motion to dismiss."  *Dring v. Sullivan*, 423 F. Supp. 2d 540, 546 n.6 (D. Md. 2006).  Plaintiffs have not identified any particular subsection of Maryland's long-arm statute that is purported to apply here, and, because their attempt to invoke jurisdiction goes beyond the limits of due process, they will not be able to do so.  *See* Md. Code Ann. Cts. & Jud. Proc. § 6–103(b).  *See also infra* note 9.

559 (4th Cir. 2014) (quotation marks and citation omitted), *cert. denied*, 135 S. Ct. 2860 (2015). The analysis turns on whether the defendant has purposefully availed himself of benefits of the forum state by establishing "minimum contacts," and whether the exercise of jurisdiction offends traditional notions of "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

A defendant's minimum contacts may give rise to either specific or general jurisdiction. General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). By contrast, specific jurisdiction exists when the defendant's contacts with the forum arise from, or are directly related to, the cause of action. *Id.* Planet Aid and Thomsen have failed to allege sufficient facts to satisfy either of these standards.

### A.    Defendants Are Not Subject To General Jurisdiction In Maryland.

It should be beyond dispute that no general jurisdiction exists over Defendants in this forum. General jurisdiction is appropriate over a defendant where a defendant's contacts with the forum state are "systematic and continuous" so that jurisdiction exists "on causes of action arising from dealings entirely distinct from those activities" described in the Complaint. *Id.* at 761 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). In other words, a court may exercise general jurisdiction over a nonresident only in the "exceptional case" where the defendant's contacts are so systematic and continuous that the defendant is "at home" in the forum state. *Id.* at 751, 761 n.19. As Plaintiffs acknowledge, Reveal is a corporation based in California, Compl. ¶ 23, and Smith and Walters work out of Reveal's Emeryville, California office. Pyle Decl. ¶ 5; Walters Decl. ¶¶ 2-3; Smith Decl. ¶¶ 2-3  None are alleged to have such a close connection with Maryland that they are "at home" if sued here. There is accordingly no general jurisdiction over any of the Defendants.

9

**B.      Defendants Are Not Subject To Specific Jurisdiction In Maryland.**

**1.      Specific Jurisdiction Cannot Rest on Defendants' Online Publications.**

To determine whether specific jurisdiction exists over a defendant, this Court must ask "(1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the defendant's forum-related activities, and (3) whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quotation marks omitted). Here, "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at Maryland" that "caus[es] injury that gives rise to a potential claim cognizable in Maryland." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). The Fourth Circuit has emphasized that both prongs of the *ALS* inquiry must be met—that is, alleging that Plaintiffs "feel the effects of any libel in [the forum state], where he lives and works," is insufficient on its own to establish personal jurisdiction. *Young*, 315 F.3d at 262; *see also Carefirst*, 334 F.3d at 400 (to establish personal jurisdiction, the defendant "must have done something more than merely place information on the Internet"). Plaintiffs cannot meet their burden on the claims in this case, because, even in the unlikely event that Defendants' online publications caused injury in Maryland, they were not focused on or directed toward Maryland.[9]

---

[9] Moreover, although, again, the burden is on Plaintiffs to identify an applicable provision of Maryland's long-arm statute and they have failed to do so, *see supra* note 8, to the extent the Court must consider the matter, *e.g.*, *Tamarian Carpets, LLC v. Ahmadi & Sons, Inc.*, 2013 WL 3771375, at *4 (D. Md. July 16, 2013), Plaintiffs cannot satisfy any prong of the statute. The most likely subsection on which they may rely, § 6–103(b)(3), "requires that both the tortious injury and the tortious act must have occurred in Maryland." *Dring*, 423 F. Supp. 2d at 546. But Defendants "operate[] the websites from" California, not Maryland, and "there is no evidence to suggest [Defendants] committed, in Maryland, the tortious act" – here, of placing content online that supposedly injured Plaintiffs. *Tamarian*, 2013 WL 3771375, at *4 (no personal jurisdiction

### a.    The Online Content Was Not Directed Toward Marylanders.

Under *Young*, personal jurisdiction can arise in Maryland from an Internet publication if the defendant "manifested an intent to direct [its] website content . . . to a [Maryland] audience." 315 F.3d at 263.  Thus, courts examine the "overall content" of the websites to determine whether the defendant's website is intended for a Maryland audience, and consider whether the specific content at issue was "posted on the Internet with the intent to target a [Maryland] audience."  *Id.*  Where content is instead meant to "appeal to a national, or even global, audience," a defendant cannot be haled into court in Maryland – lest the defendant be subject to jurisdiction anywhere in the country, or even the world.  *Fertel v. Davidson*, 2013 WL 6842890, at *5 (D. Md. Dec. 18, 2013); *see also Tamarian*, at *6 (no personal jurisdiction based on the fact that defendant's websites were "accessible to all Maryland residents" because "reliance on this fact … would erode the idea that a state has geographically limited judicial power") (internal quotation marks and citation omitted).

In *Young*, the Fourth Circuit held there was no personal jurisdiction in Virginia over the companies that operated websites of Connecticut-based newspapers, because the websites were "not designed to attract or serve a Virginia audience," nor did they "contain[] advertisements aimed at a Virginia audience."  *Young*, 315 at 263.  In *Carefirst*, too, there was no jurisdiction where defendant's website had no intent to "target a Maryland audience"; instead, "the website state[d] that [defendant] is a non-profit organization that offers assistance to more than 46,000 hurting women and families *in the Chicago area*."  *Carefirst*, 334 F.3d at 401.  Likewise, in

---

under Maryland long-arm or due process clause over out-of-state retailer who operated his website from New York and had minimal sales to Maryland).  Nor does Defendants' "irregular" contact with Maryland "rise to the level of a 'persistent source of conduct'" sufficient to give rise to long-arm jurisdiction under § 6–103(b)(4), which applies to torts committed outside Maryland.  *Id.* at *5.

11

*Fertel*, there was no personal jurisdiction over an individual who posted content to websites accessible "not just in Maryland, but nationally, and globally," because there was nothing in the "posts to suggest that they were meant for a Maryland audience, as opposed to a national or even a global audience." 2013 WL 6842890 at *4; *see also Dring*, 423 F. Supp. 2d at 548 (no personal jurisdiction over defendant who emailed defamatory statements on an email "listserv" with national membership). Notably, in both *Carefirst* and *Young*, there was no jurisdiction despite the claims that "Maryland [or Virginia, in *Young*] is the focal point of the injuries" that the respective plaintiffs suffered. *Carefirst*, 334 F.3d at 401 (discussing *Young*, 315 F.3d at 262). Rather, "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction is to be upheld." *Id.* (quotation marks and alterations omitted).

Nothing from Reveal's California-based website or podcast indicates that any of the publications at issue here were "meant for a Maryland audience" as opposed to a "national or even a global audience." To the contrary, the "character of the website at issue" reflects that it was not "intended to target Marylanders" but instead reach a national and international audience. *Carefirst*, 334 F.3d at 400. The host of the podcast addressed listeners directly, directing his comments to all Americans, not Marylanders: "[m]aybe you've seen these Planet Aid clothing donation boxes in shipping center parking lots ... in 21 states" he noted, and then continued by saying that "[i]f you're paying taxes, you're contributing, through ... the US Department of Agriculture," not via any Maryland agency. *See* Compl. Ex. G at 2. Reveal's website likewise makes no direct appeal to Marylanders, has no Maryland-centric content, and has no part or subsection its website directed to Maryland interests. Pyle Decl. ¶¶ 10-11. Further, there is no

12

evidence or allegation that Reveal pushed this story in particular to Marylanders, or any reason Marylanders in particular would be more interested than others about a story stretching from Malawi to Denmark that details how federal funds have been spent by a charity that operates in at least 21 states domestically, and abroad otherwise.

Some courts also examine explicitly whether the website at issue is "interactive, semi-interactive, or passive," that is, whether the website operator intends to engage in a two-way dialogue with users in a particular state (interactive or semi-interactive) or "merely makes infor-mation available" online (passive). *Carefirst*, 334 F.3d at 399. The mere "passive" placement of information on a website from outside of Maryland that is not directed to Marylanders "cannot render [the out-of-state publisher] subject to specific personal jurisdiction in a foreign court," since there is no purposeful direction. *Id.* Here, there is no allegation or any evidence that Reveal reached out and encouraged Marylanders to interact with the articles or podcast. Instead, Defendants "made the information available" to all readers, everywhere, with no particular inter-activity encouraged. This passive activity cannot support personal jurisdiction.

### b.      Maryland Was Not The Focus of The Articles.

Personal jurisdiction is also not permitted based on the online content because its focus was not Maryland. In *Young*, for example, the Connecticut newspapers wrote about Virginia prisons, but the "*focus* of the articles" was "Connecticut prisoner transfer policy and its impact on the transferred prisoners and their families back home in Connecticut" – not anything specific to Virginia. 315 F.3d at 263; *see also Consulting Eng'rs*, 561 F.3d at 280 (no specific personal jurisdiction over out-of-state defendant where plaintiff "failed to demonstrate that the focal point of the alleged tortious activity was Virginia"). Similarly, in *Dring*, there was no specific jurisdiction where the allegedly defamatory emails were "focused on Plaintiff's [tae kwon do-related] activities at the national and international level" and had no strong connection to

13

Maryland.  423 F. Supp. 2d at 548.  And in *Clemens v. McNamee*, 615 F.3d 374 (5th Cir. 2010), there was no jurisdiction in Texas over defamation claims by a Texas-domiciled baseball player because there was no proof "Texas was the focal point" of defendant's statements that Clemens used steroids.  *Id.* at 380.  Instead, the allegedly false accusations were placed on a nationally-accessible website and appeared in a report of intense national interest, not one with a local focus.  *Id.* at 377.  *See also Revell v. Lidov*, 317 F.3d 467, 476 (5th Cir. 2002) (no personal jurisdiction over defendant accused of Internet-based defamation because "[i]f the article had a geographic focus, it was" not the forum state).

The same analysis applies here.  The "focus" of the allegedly false articles and podcast on which the claims are based is not Maryland.  The Complaint acknowledges that Planet Aid itself is a global organization.  There are allegations that Planet Aid has used its funds for charitable purposes "in 16 countries, including in Malawi," and that it "help[s] impoverished and needy nations throughout the world."  Compl. ¶ 17.  There are also allegations about Planet Aid's contacts in Rhode Island, *id*. ¶¶ 60, 62, and at UNICEF, a United Nations organization, *id*. ¶ 64; detailed allegations about what occurred in Africa, mostly Malawi, *e.g.*, *id*. ¶¶ 78, 140, 145, 158, and acknowledgement that Defendants' reporting goes from "Malawi to Denmark and back to [the federal government in Washington]."  *Id*. ¶ 124. And, of course, one of the two Plaintiffs is a "permanent resident of Malawi" with no indication she has even ever been to Maryland.

Moreover, the few sources of online content that Plaintiffs identify that does not come directly from Reveal's California-based website or podcast provides no additional Maryland-based focused.  None of the Internet content not distributed directly through Reveal was directed at or focused on Maryland.  Plaintiffs target an article about the actions of a *Minnesota* legislator published on a Minnesota-focused website, *see* Compl. Ex. F; and an online story and video

posted on the website of NBC4, in Washington, D.C., *see* Compl. Ex. H. Neither online publisher is based in Maryland, and the stories did not target Marylanders nor focus on any Maryland connection with the events. Rather, they had the same globe-spanning focus as Reveal's own online reporting on Planet Aid. *See* Exs. F, H.

To be sure, a Washington D.C.-based website is closer geographically to Maryland than Minnesota or California. But all the websites are broadly accessible anywhere, and the key point that defeats jurisdiction is that no article targeted *Maryland* readers or focused on *Maryland* events or consequences. *See Young*, 315 F.3d at 263. Further, the fact that neighborhoods in Southern Maryland are part of the Washington, D.C.-metro area does not change the analysis, lest plaintiffs be permitted to simply pick and choose their preferred jurisdiction among Maryland, Washington, D.C., and Virginia because of their geographic proximity. *See Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 331 (D.C. 2000) (D.C. court could exercise jurisdiction over supermarket chain with stores exclusively in Maryland and Virginia only because defendant "purposefully direct[ed] advertisements for its Maryland and Virginia stores at a potential customer base in the District of Columbia" via advertising in the Washington Post); *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1089 (S.D.N.Y. 1984) (refusing to group Washington, D.C. into a "geographical nexus with the surrounding residential communities" of Virginia and Maryland for venue and jurisdiction purposes).[10]

---

[10] To the extent that there is personal jurisdiction over Defendants based only statements made on the Washington, D.C.-metro area website, there still would not be jurisdiction over all claims and statements in this case. Thus, as a matter of convenience, it would make sense to transfer this case to a better venue so that one court could resolve the entire action. *See infra* Sec. II.B.

15

**2.      Defendants' Alleged Offline Conduct Does Not Support Specific Jurisdiction in Maryland.**

There is also nothing that supports exercising personal jurisdiction over Defendants based on the extent to which Plaintiffs, even while directing the core of their claims to national and global online distribution of targeted articles and podcasts, also allege incidental offline conduct by Defendants in Maryland.  First, it is undisputed the articles' investigatory focus was in Africa, and that Defendants conducted additional reporting in Denmark and made phone calls and inquiries with the federal government in Washington, D.C..  Plaintiffs claim that "Defendants contacted various persons in Maryland, including conducting interviews" there, Compl. ¶ 14, but the Complaint does not provide any information identifying those persons or indicating how or from where these "contacts" took place.  For good reason:  neither Smith nor Walters conducted a single interview for these stories in Maryland, and visited Maryland only to take a set of unused photographs that might have provided illustrations for the story.  Smith Decl. ¶ 7; Walters Decl. ¶ 8.  Plaintiffs' vague allegation contains no facts that can support specific jurisdiction, and it is contradicted by what actually occurred.

Defendants' "sporadic news gathering" in Maryland "is an insufficient predicate for specific jurisdiction."  Robert D. Sack, *Sack on Defamation* § 15.1.3[C][1][c] (internal quotation marks and editing omitted).  Applying this principle, the Fourth Circuit held that a defendant who obtained information from Maryland electronically and made occasional phone calls into the state was not subject to jurisdiction in a Maryland court.  *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 137 (4th Cir. 1996).  The same outcome is compelled here.  *Accord Buckley v. N.Y. Times Co.*, 338 F.2d 470, 474 (5th Cir. 1964) (sending reporters to Louisiana on special assignment 20 times over 3 years insufficient to confer personal jurisdiction).

Second, Plaintiffs identify several offline radio and television broadcasts they claim were directed at Maryland.  But in fact they have not identified a single Maryland-based broadcaster, television station, or publication that published anything defamatory about Plaintiffs.  Instead, they rely on retransmissions of the original podcast episode on WAMU, a *Washington, D.C.-based public radio station,*[11] Compl. ¶¶ 14, 55-56, and a piece of investigative journalism that aired on NBC in Washington, D.C. for which Defendants engaged in some collaboration with D.C.-based reporters.[12] The reach of these D.C.-focused broadcasts to Maryland is nothing more than "random, isolated, or fortuitous" circulation that does not create personal jurisdiction over a broadcaster.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).  In *Keeton*, the Supreme Court held that personal jurisdiction exists over an out-of-state publisher only where it "continuously and deliberately exploited the [forum-state] market."  *Id.* at 781.  That did not occur here:  retransmissions for which Defendants had no direct responsibility, combined with a single local news report to a station based in Washington, D.C. – not Maryland – provides no reason Defendants could "reasonably anticipate being haled into court [] here in a libel action."  *Id.*

As Plaintiffs have identified no broadcast activity arising from *within* Maryland, this Court may exercise personal jurisdiction based on Defendants' out-of-state conduct only if they "intentionally directed [] tortious conduct toward the forum state, knowing that [it] would cause

---

[11]  *See* FCC FM Query, WAMU, https://transition.fcc.gov/fcc-bin/fmq?call=wamu&arn=&state=&city=&freq=0.0&fre2=107.9&serv=&vac=&facid=&asrn=&class=&list=0&ThisTab=Results+to+This+Page%2FTab&dist=&dlat2=&mlat2=&slat2=&NS=N&dlon2=&mlon2=&slon2=&EW=W&size=9.

[12]  Compl. ¶¶ 14, 55-56, 59.  *See* FCC TV Query, WRC-TV https://transition.fcc.gov/fcc-bin/tvq?call=wrc-tv&arn=& state=&city=&chan=0.0&cha2=69&serv=&type=&facid=&asrn=&list=0&ThisTab=Results+to+This+Page%2FTab&dist=&dlat2=&mlat2=&slat2=&NS=N&dlon2=&mlon2=&slon2=&EW=W&size=9.

17

harm to a forum resident." *Carefirst*, 334 F.3d at 397-98 (discussing *Calder v. Jones*, 465 U.S. 783 (1984)).  Plaintiffs cannot meet this standard.  Defendants did not direct any conduct toward Maryland by permitting a D.C.-based public radio station to rebroadcast their nationally-directed story, nor by allowing a D.C.-based TV station to air a single brief report based on Defendants' previously-published reporting.  *See Calder*, 485 U.S. at 789-90 (personal jurisdiction permitted over National Enquirer in California in part because that was where magazine has its "largest circulation" of 600,000 copies).  Moreover, "even assuming that the Defendants knew" their actions would be broadcast, by those outlets, the "stations were not agents of, nor were [they] under the control of, the Defendants."  *Kulik Photography v. Cochran*, 975 F. Supp. 812, 813 (E.D. Va. 1997) (no personal jurisdiction in Virginia over Los Angeles-based lawyers for O.J. Simpson in copyright suit where alleged infringement occurred nationally, via redistribution of images on Court TV).

Nor did Defendants know their reporting would allegedly harm any Maryland resident. To the contrary:  it is undisputed that Plaintiff Thomsen is a resident of Malawi, not Maryland, and that Planet Aid is a Massachusetts-based non-profit with operations in nearly two dozen states (including California) and global connections in 16 countries.  Compl. ¶ 17.  Planet Aid alleges they have their "principal place of business" and "substantial operations" in Maryland, but they do not describe any Maryland-based operations.  Moreover, their allegation that Maryland is their principal place of business is directly contradicted by a verified Complaint filed on June 10, 2016, in which they claimed that they were "headquartered in Milford, Massachusetts," not in Maryland.  *See* London Decl. ¶¶ 2 & Ex. 1; *see also id.* at ¶¶ 3-4 & Exs. 2-3 (two verified complaints filed on April 21, 2015, in the Central District of California alleging Planet Aid is a "Massachusetts Non-profit Corporation" that is "headquartered in Milford,

Massachusetts and with local operations based in Commerce, California."). This judicially-noticeable evidence reinforces that Defendants did not direct their reporting on any forum resident, as neither Plaintiff resides here.  Thus, neither the alleged over-the-air broadcast nor the incidental news-gathering activities supports personal jurisdiction in Maryland.

## II.    VENUE DOES NOT LIE IN THIS DISTRICT.

Plaintiffs stake their entire claim that "venue is proper in this Court in accordance with 28 U.S.C. § 1391(a)" solely on the asserted ground that "a substantial part of the events … giving rise to the claim … and wrongful conduct by each Defendant occurred in this District," Compl. ¶ 6, which fails to give rise to venue for reasons similar to the reasons the Court lacks personal jurisdiction over Defendants.  Inasmuch as Plaintiffs' pleading of facts relating to jurisdiction can fairly be called "minimalist," on venue, the Complaint does not offer even the fig leaf of broadcasts in adjoining jurisdictions to suggest any *events* or *conduct* that occurred in this District.  As explained, all reporting alleged by Plaintiffs to be libelous took place from California or outside the U.S., and all publishing of the resulting stories occurred online to a national and global audience, and was not direct specially to or have any focus on the state of Maryland.  Litigating this case in this District would thus be improper not only because none of the events that give rise to the claims occurred here, but it would also be inconvenient because the majority of the witnesses reside outside of Maryland and the substantive law of California should apply.  For all these reasons, the Court should dismiss for lack of venue or, in the alternative, transfer this case to the Northern District of California, where the court could exercise personal jurisdiction over all the California-domiciled Defendants and resolve this case expeditiously under California law.

19

**A.    The Case Must Be Dismissed Because No Substantial Part of the Action Giving Rise to Any Claim Occurred in Maryland.**

As with personal jurisdiction, it is Plaintiffs' burden to show that venue is proper. *Lupo*, 2015 WL 410273, at *3. Moreover, "[i]n a case involving multiple claims, the plaintiff bears the burden of showing venue is appropriate as to each claim." *Id.* (quotation marks, alterations and citation omitted). Like the personal jurisdiction inquiry, this Court need not accept all allegations as true, but instead may "freely consider evidence outside the pleadings." *Id.* (quotation marks and citation omitted).

The federal venue statute, 28 U.S.C. § 1391, provides that venue is proper in a particular forum if one of two primary conditions are satisfied. First, venue is proper "if all defendants are residents of the State in which the district is located." *Id*. § 1391(a)(1). This does not apply here because it is undisputed that all Defendants are California residents. Second, venue is proper if "a substantial part of the events or omissions giving rise to the claim occurred" in this judicial district. Here, the "events or omissions giving rise to the claim[s]" involve the investigation and reporting by Defendants; preparation of their print and audio news stories; and their ultimate dissemination online and offline. As no substantial part of the reporting, preparation, or publication of Defendants' reporting occurred in Maryland, venue is improper here.[13]

No substantial part of Defendants' reporting and investigation of the publications giving rise to Plaintiffs' claims occurred in Maryland. Rather, indisputable evidence shows that Defendants' reporting occurred in Africa and Denmark with follow-up with government officials in Washington, D.C. *See* Walters Decl. ¶ 8; Smith Decl. ¶ 7. Notably, "for venue to be proper,

---

[13] If neither prongs one and two are not satisfied anywhere, a catch-all provision sets venue where there is personal jurisdiction over any defendant. 28 U.S.C. § 1391(b)(3). Venue lies in the Northern District of California under prong one because all Defendants reside there, so this provision does not come into play.

*significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (emphasis in original). Here, there was at most incidental contact with Maryland, comprising no more than part of "this litigation's factual background," and not the significant activity that "give[s] rise to [plaintiff's] claim in the sense required by the statute." *MTGLQ Inv'rs, L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003); *see also Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003) (venue improper in defamation case brought in New York where New Jersey was focus of allegedly defamatory letter and plaintiff's New York business was involved only "peripherally"); *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 151 (D.D.C. 2008) (venue not proper in D.C. where "events underlying [plaintiff's] ... claim" that "span the globe and implicate numerous jurisdictions," had only a tenuous connection to the forum ).

Moreover, the actual preparation of the podcast and articles about Planet Aid's operations occurred at Reveal's office in the Northern District of California. *See* Pyle Decl. ¶ 10. That is where the initial articles and broadcast were written and edited, and where the podcast was recorded and uploaded. California, and not Maryland, is where these critical decisions were made that form the core of Plaintiffs' claims. *Id.*

Finally, no substantial part of the online or offline publication or broadcast of the podcast or articles occurred from Maryland. Rather, the Reveal articles and podcast were posted from Defendants' office in California. *See id.* That cannot support venue in Maryland, because "if posting information on a website in [California] was sufficient to permit venue in any district in which a plaintiff accessed the website and read the posting, then logically venue could lie in every state where a plaintiff resides or has access to a personal computer." *Miller v. Asensio*, 101 F. Supp. 2d 395, 405 (D.S.C. 2011). Courts have not granted plaintiffs carte blanche to

21

choose their own venue in cases based on information posted online, because "[s]uch a rule would eviscerate any protection for a defendant." *Id.*; *see also Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 608 (S.D.N.Y. 2016) (venue not proper in New York over foreign defendant in copyright action where the materials were available online, because the fact that "infringing material is accessible via the internet in a jurisdiction is hardly sufficient to conclude that this infringement *occurred* in this district").  Moreover, as shown above, there is no evidence of injury in Maryland, because one Plaintiff is a resident of Malawi and the other a non-profit based in Massachusetts that has operations throughout the nation.  *See supra* pp. 3-4.

Given the tenuous or non-existent connection to Maryland of virtually all of Defendants' conduct, a claim-by-claim analysis shows that venue is not proper for any claim. To start, the following claims are based entirely on Defendants conducting an investigation abroad then finalizing and distributing a podcast and articles around the globe from California, with no allegation of Maryland focus, targeting, or specifically local distribution:

- Claim II: Based on statement about what U.S. government knew about a Danish fugitive, published online at Reveal in March 2016.

- Claim IV: Based primarily on statements about Planet Aid's operations in Africa and the US government connection, published in statements made on KCRW in Los Angeles, California, on March 25, 2016.[14]

- Claim V: Based primarily on statements about Planet Aid's operations in Africa and the US government connection, published online at Reveal in May 2016.

- Claim VII: Based on link between Planet Aid and Danish organization, published online at Reveal in June 2016.

- Claim VIII: Based on claim that United Nations organization "cut ties" to African company affiliated with Planet Aid, published online at Reveal in August 2016.

---

[14]   Count IV refers to "WKRC," a station in Cincinnati, Ohio, but Defendants understand this to mean "KCRW," a Los Angeles station that, unlike "WKRC," appears in the statement of facts.  *See* Compl. ¶¶ 55, 79-80.

- Claim IX: Based on statement following money from "Malawi to Denmark to Washington, DC," made published online at Reveal in August 2016.

- Claim X: Based on claim about use of funds given to Planet Aid, made in Malawi-based publication based on Reveal's reporting, allegedly published to Malawi-based audience in May 2016.

- Claim XI: Based on report that a Minnesota Congresswoman had opened an investigation into Planet Aid, published online at Reveal on August 17, 2016.

- Claim XII: Based on article about a Minnesota Congresswoman who had opened an investigation into Planet Aid, published online to a Minnesota audience by Minnpost on August 18, 2016.

- Claim XIV: Claim for tortious interference with prospective economic advantage based on a variety of national and international broadcasts and identifying alleged injury to donors and associates of Plaintiffs, none of whom are alleged to reside in Maryland.

These claims lack even incidental connection with Maryland.

For the few remaining claims that incorporate the D.C.-based broadcasts that may have been incidentally distributed into Maryland (Claims VI, XXIII, and XV, and perhaps Claim I), it is still true that a "significant" portion of events that form the basis of the claim did not occur in Maryland. That is because the identified broadcast from a D.C.-based television station contains a *single* allegedly defamatory statement by Defendant Smith: that Planet Aid employees promised to donate a portion of their salaries to the Danish-based Teachers Group. *See* Compl. Claim VI. This single allegedly defamatory statement broadcast by a D.C.-based station does not show that a "substantial" portion of events involved in the claim occurred in Maryland for even these claims. Even if there would be venue for Claim VI only – which is brought against Defendants Smith and Walters only based on the D.C.-originated broadcast – venue would still be improper for the remaining claims, and for the claims against Defendant Reveal, claims that can be adjudicated only in California, warranting dismissal of all claims for want of venue. *See Lupo*,

2015 WL 410273, at *3 (where a case involves multiple claims, "the plaintiff bears the burden of showing that venue is appropriate as to each claim" (quotation marks and citation omitted)).

> **B.    Even If Some Portion of This Case Legally Could Proceed in Maryland, the Case Should be Transferred to the Northern District of California.**

Even if this Court were to conclude that venue were proper here in Maryland over at least some of Plaintiffs' claims, this Court should still transfer this entire case to the Northern District of California. Neither personal jurisdiction nor venue would be in doubt there; moreover, Northern California would be substantially more convenient, because (a) California substantive law applies to the claims, (b) California has a substantial interest in applying its strong protections for reporters based in that State, and (c) the largest collection of U.S.-based witnesses and evidence will be located in California. Moreover, California will not be inconvenient for Planet Aid because it has operations there and it has frequently availed itself of the state and federal courts of the State. It will also be no more inconvenient than Maryland for Plaintiff Thomsen, a resident of Malawi.

Multiple statutes permit this Court to transfer this entire action to the Northern District of California. In particular, 28 U.S.C. § 1406(a) allows the Court to transfer it "to any district or division in which it could have been brought" rather than dismissing for lack of venue. Further, 28 U.S.C. § 1404(a) grants discretion to a court to transfer a case to any district where it may have been brought "[f]or the convenience of parties and witnesses, in the interests of justice."[15] This case could have been brought in the Northern District of California. All Defendants are residents of that District, and it is also where a substantial portion of the events that give rise to

---

[15]   That provision also permits a court to transfer a case upon consent, should Plaintiffs opt to go that route rather than litigating jurisdiction and venue.

Plaintiffs' claims occurred.  Thus, there would be both personal jurisdiction over Defendants and venue for this case in the Northern District of California.

When considering a motion to transfer venue, courts in this Circuit consider a variety of case-specific factors, including: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." *Trustees of Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see also Lupo*, 2015 WL 410273, at *6 (articulating more detailed sub-factors).  As these factors make clear, not only does a plaintiff's choice of forum have variable weight, but a "plaintiff's choice of forum is only one relevant factor" in the analysis.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).  Indeed, it is not the overriding factor – rather, "the convenience of witnesses, most particularly nonparty witnesses who are important to the resolution of the case," is "often cited as the most important factor."  15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3851 at 199 (3d ed.).  Here, other than Plaintiffs' choice of a Maryland forum, which carries minimal weight, the factors weigh heavily in favor of transfer to the Northern District of California, for a variety of reasons.

### 1.    The Northern District of California Will Be More Convenient for Witnesses and the Parties, and is an Equitable Venue for Planet Aid.

In a defamation action, discovery related to liability often focuses on two issues:  (1) the accuracy of the statements at issue, and (2) the circumstances under which they were made.  *See, e.g.*, *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).  Conducting that discovery through gathering documentary evidence and depositions from party and non-party witnesses will be substantially more convenient in the Northern District of California than here in Maryland. Nor would that venue work a prejudice to Planet Aid.

*First*, the Northern District of California has an intimate connection with Defendants.  It is where virtually everyone connected with the preparation and editing of the articles on Reveal as well as the podcast live and work.  That includes not just individual Defendants Smith and Walters, but also editors, managers, the podcast host, and other Reveal staff who may ultimately have evidence, be deposed, or appear at trial.[16]  London Decl. ¶ 9.  These individuals have no connection with Maryland, which is thousands of miles from where they live and work.

*Second*, the Northern District of California would be more convenient for certain U.S.-based non-party witnesses, while other witnesses are thousands of miles from both Maryland and California, and so would not be affected either way.  Defense witnesses residing in the Northern District of California might include individuals familiar with Defendants' workflow, including other members of the media in California.  London Decl. ¶ 9.  Other potential witnesses reside in Malawi, Denmark, Mexico, and throughout the country.  While not all witnesses will be within the subpoena power of any court, even with a transfer, "more identified potential witnesses" reside outside of Maryland "than within it," which is a factor that makes transfer of venue appropriate.  *Weeks Marine, Inc. v. Stokes*, 2012 U.S. Dist. LEXIS 11760, at *7-8 (S.D. Miss. Feb. 1, 2012); *see also Piedmont Hawthorne Aviation, Inc. v. TriTech Envtl. Health & Safety, Inc.*, 402 F. Supp. 2d 609, 615 (M.D.N.C. 2005) (transfer appropriate where "all of Defendant's employees with knowledge concerning this dispute are located in New York").

By contrast, it is not clear that *any* of Plaintiffs' witnesses reside in Maryland.  Plaintiff Thomsen lives in Malawi, and Planet Aid is a Massachusetts-based non-profit.  The Complaint does not make clear where the Planet Aid officers are or who may have evidence that Plaintiffs

---

[16]  Even with the advent of electronic document storage, a "meaningful factor in the analysis" remains whether the bulk of relevant evidence is located closer to the current or proposed new venue.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315-16 (5th Cir. 2008).

will use to attempt to prove that Defendants' statements were false. But it is unclear why any of these witnesses would live and work in Maryland. This too augurs in favor of transfer. *Finmeccanica S.p.A. v. Gen. Motors Corp.*, 2007 WL 4143074, at *6 (E.D. Va. Nov. 19, 2007) (witness convenience weighed in factor of transfer where federal court in California "would be more convenient for Defendants' party witnesses, who would then not have to fly cross-country," and "transfer ha[d] a minimal impact on Plaintiffs' party witnesses," who did not reside in the District but were located outside the country).

*Third*, Planet Aid has substantial operations in California, just as it has in Maryland, and has previously litigated in California state and federal courts. While the Complaint is silent on how Maryland is Planet Aid's alleged principal place of business (and it has elsewhere pled to the contrary quite recently, *see* London Decl. ¶¶ 2-4 & Exs. 1-3), at most it appears Planet Aid has what it calls a "hub" in Elkridge, Maryland, *see* London Decl. ¶ 6 & Ex. 5. But Planet Aid also has operations based in Carson, California, with "California" being one of Planet Aid's service areas as well. *Id.* Planet Aid is also no stranger to litigation in California. In the last five years, it has been the plaintiff in at least one lawsuit in state court in California, and two in federal court in California; all of these complaints confirm that Planet Aid has operations in California.[17] London Decl. ¶¶ 3-5 & Exs. 2-4. There is accordingly a strong basis for venue in Northern California.

---

[17] Further, although "convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)," *Union of Orthodox Jewish Congregations of Am. v. Brach's Confections, Inc.*, 2005 WL 1115222, at *2 (D. Md. May 11, 2005) (quotation marks omitted), counsel for Plaintiffs in fact has multiple offices in the Northern District of California, so they would not be unduly prejudiced, *see* http://www.squirepattonboggs.com/locations/san-francisco; http://www.squirepattonboggs.com/locations/palo-alto.

**2.      The Interest of Justice Favors Transfer to the Northern District of California.**

The broad interest of justice factor includes non-convenience factors such as "appropriateness in having a diversity case in a forum that is at home with the state law that must govern," and "local interest" in the controversy. *Lupo*, 2015 WL 410273 at \*6.  Here, the interest of justice strongly favors transfer to California, because California law would govern and a California federal court would have a strong interest in insuring the state's important protections for reporters engaged in reporting on matters of public interest apply.

In tort actions, Maryland applies the law of the place where the tort was committed (*lex loci delicti*).  "In defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." *Wells v. Liddy*, 186 F.3d 505, 521-22 (4th Cir. 1999).  Where the "place where the defamatory statements were published" is difficult to discern when statements are simultaneously published around the world over the Internet, "application of Maryland's traditional place of harm rule be-comes cumbersome, if not completely impractical." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 698-99 (D. Md. 2011) (internal quotation marks and citation omitted). Thus, instead of applying a bright-line rule in multistate defamation cases, courts have looked to the Restatement (Second) of Conflict of Laws, which provides that (1) in a defamation action based on statements "broadcast over radio or television … or similar aggregate communication," the choice of law is "determined by the law of the state which … has the most significant relationship to the occurrence and the parties." *Id.* (quoting Restatement § 150).  California has the most "significant relationship" with this case.

The Restatement first directs courts to examine where the plaintiff was "domiciled at the time [of the alleged defamation], if the matter complained of was published in that state." *Id.*

28

But that provides little guidance here. Plaintiff Thomsen is a resident of Malawi, whose law Plaintiffs have not invoked in the Complaint. Meanwhile, Plaintiff Planet Aid is a Massachusetts corporation, but the Complaint has not identified any Massachusetts-focused injury. Instead, the harms Plaintiffs allege have no specific geographic focus (other than perhaps across multiple countries) and are claimed to have affected Plaintiffs' reputation "in the community" broadly, which apparently includes "government agencies, individuals, and other not-for profits." Compl. ¶¶ 203–205. The multi-state (or multi-national) nature of the alleged conduct and injury thus requires consideration of, among other things, where Plaintiffs are well known, where the principal activity underlying the articles occurred, the principal circulation of the allegedly defamatory publication, the state where "defendant did his act or acts of communication," and the state of Defendants' domicile or principal place of business. *See* Restatement (Second) Conflict of Law § 150 cmts. e–f.

The multi-factor inquiry reveals that California has the strongest relationship to this case. California's strong protections for California-based journalists exercising their First Amendment rights outweigh the diffuse reputational harms Plaintiffs claim to have suffered in no jurisdiction in particular. In particular, California has an Anti-SLAPP law that was passed to provide strong remedies to combat "lawsuits brought primarily to chill the valid exercise of the constitutional right[] of freedom of speech" because the Legislature found that "it is in the public interest to encourage continued participation in matters of public significance, and ... this participation should not be chilled through abuse of the judicial process." Cal. Civ. Proc. Code § 425.16(a). Under the First Amendment, Plaintiffs ultimately will be required to prove Defendants acted with "actual malice" – that is, "with knowledge that [any statement] was false or with reckless disregard of whether it was false." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

Application of the Anti-SLAPP law will require Plaintiffs to prove early on that they have a probability of meeting this high standard (and they do not).  California thus has a strong interest in applying this important protection to an acclaimed non-profit investigative reporting entity that has been producing important journalism from California for many years.

The court in *Davis v. Costa-Gavras*, 580 F. Supp. at 1090, applied a similar analysis to apply the law of Defendants' residence – there, New York – to a multi-state defamation claim analogous to this one.  In *Costa-Gavras*, plaintiffs were U.S. diplomats and a military official who claimed they were defamed by their portrayal in a book and a film that implicated them in a Chilean murder.  The case was filed in the Eastern District of Virginia, but that court transferred to New York, where the book publishers were headquartered.  The New York court then determined that New York substantive law would apply to the claims – even though New York was not the plaintiffs' domicile – because New York, as one of the centers of the media industry, "has a significant interest in assuring that the risks and liabilities flowing from publishing" are uniformly applied to companies and individuals based there.  *Id.* at 1092.  By contrast, the plaintiffs were "from different jurisdictions and the alleged damage to their reputations is diffused over fifty states and several foreign nations."  *Id.* at 1093.  Thus, the "state where defendants' significant acts and omissions gave rise to their liability" – there, New York, and here, California – is the most appropriate source of legal norms.  *Id.*; *see also Weinstein v. Friedman*, 1996 WL 137313, at *6–7 (S.D.N.Y. Mar. 26, 1996) (defamation case applying the law of defendants' place of business, New York, because it "has a strong policy in protecting its media defendants" and "there is little relating to the defendants' activities that points to the application of" plaintiffs' preferred choice of law).

Parallel analysis should lead to a similar conclusion here.  California has strong public policies favoring journalists and a stable of media companies exercising their First Amendment rights, while Maryland has absolutely no connection to one of the plaintiffs (Thomsen), and no particularly strong connection to the other (Planet Aid).  By contrast, Defendants have a strong connection to California, and California has a strong connection to this case and a strong interest in applying its policies here.  A federal district court in California will be well-versed with the nuances of California's provisions that govern journalists and claims based on the Defendants' exercise of their free speech rights.  Thus, transfer to the Northern District of California would be in the interests of justice.

### 3.    Plaintiffs' Choice of Forum Carries Minimal Weight.

Finally, a court also considers the Plaintiffs' choice of forum.  In this case, the Plaintiffs' choice gets minimal weight and is overcome by the other factors.  "Although a plaintiff's choice of forum is ordinarily accorded considerable weight, that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).  Moreover, "courts have routinely given less weight to a foreign plaintiff's choice of forum." *Brach's Confections*, 2005 WL 1115222, at *3 (transferring case to forum of defendant's place of business, because balance of factors tipped in defendant's favor and foreign plaintiff's choice of forum was given minimal weight) (citation omitted).

Here, Plaintiff Thomsen is, of course, a foreign plaintiff whose choice is accorded almost no weight.  *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003) ("[W]hen a foreign plaintiff sues in a United States forum such choice is entitled to less deference because one may not easily presume that choice is convenient.").  And there are no facts to support the proposition that Maryland is Plaintiff's home forum – the Complaint details no

particular operations in Maryland nor any harm suffered uniquely in Maryland – so Planet Aid's selection of Maryland gets little weight as well.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 266, (1981) (holding, on motion to dismiss on grounds of forum *non conveniens*, that plaintiff's forum choice deserves less deference when he has not chosen his home forum).  Thus, the minimal interest that either Plaintiff has of litigating in Maryland is outweighed by the substantial interest that Defendants have of litigating in California.  California is more convenient for the parties and witnesses, and transfer to a court that is familiar with the substantive law that will apply to this case will aid judicial economy.

## CONCLUSION

This case should be dismissed for lack of jurisdiction and improper venue, or, in the alternative, transferred to the Northern District of California in the interests of justice and for the convenience of the parties.

Dated:  October 31, 2016          Respectfully submitted,

/s/  Ronald G. London
Thomas R. Burke (*pro hac vice pending*)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
(415) 276-6500
(415) 276-6599 (fax)
thomasburke@dwt.com

Ronald G. London (D. Md. Bar Number 16846)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C.  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
ronnielondon@dwt.com

Attorneys for Defendants
Reveal, Center for Investigative Reporting,
Matt Smith and Amy Walters

32

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October, 2016, I filed the foregoing Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative to

Transfer Venue, with the Clerk of the Court for the United States District Court for the District

of Maryland via ECF, by which service on all participants in the case will be accomplished.


/s/ Ronald G. London
Ronald G. London